George W. Bowen, Appellant, v. Aetna Indemnity Company, Appellee.

False representations: RESCISSION: WAIVER. One induced to purchase property by false representations waives his right to rescind by making a new and different contract for payment of the balance due, if made with knowledge of the fraud; but the burden is upon the other party to the contract to show that he had such knowledge. And if such new contract was made with a view of settling matters growing out of the alleged fraud it is a bar to a subsequent action for rescission.

Evidence: EXAMINATION OF WITNESSES: USE OF LETTERPRESS COPIES. Copies of letters written by a party to an action and referring to matters germane to his direct examination may be used for the purpose of refreshing his recollection, in connection with his cross-examination.

Same. Where a party has been notified to produce original letters written to him and he produces such as he can find, letterpress copies of other letters written by the same party may be referred to on his cross-examination, for the purpose of ascertaining whether he ever received letters containing statements appearing in the copies.

Contracts: ATTORNEY AND CLIENT: CONSTRUCTION. In this action plaintiff contracted for the purchase of corporate stock but subsequently contended that the purchase was made through false representations. A new agreement for payment of the balance due on the stock by performance of legal services was made, which provided that when practicable defendant would employ plaintiff as its legal representative in certain territory, and all fees should be applied in payment for stock. *Held,* that while the new contract released plaintiff from payment otherwise than in services it did not bind defendant to employ him exclusively in its business within that territory.

*Appeal from Carroll District Court.*—Hon. F. M. Powers, Judge.

Wednesday, July 5, 1911.

Action to recover back the purchase price paid for stock in the defendant company. The claim is based upon an alleged rescission of the contract of purchase on the ground of false representations. At the close of the evidence, there was a directed verdict for the defendant, and the plaintiff has appealed.—*Affirmed* in part and *reversed* in part.

*B. I. Salinger* and *L. H. Salinger,* for appellant.

*Read & Read,* for appellee.

Evans, J.—About January, 1904, the plaintiff became the owner of ten shares of stock in the defendant company. They were purchased at the price of $125 per share. They purported to have a par value of $100 per share. The plaintiff avers that he was induced to purchase the same by certain false representations made to him by defendant's agents, and that he discovered the falsity of such representations shortly prior to March 19, 1908. That upon such date he rescinded the contract and tendered back the stock. In a second count of his petition, the plaintiff claims damages for breach of a certain contract of employment. This contract will be set out later herein. The allegations of the petition are generally denied in the answer. By way of affirmative defense, the defendant also pleads that on September 22, 1905, the plaintiff, with full knowledge of the alleged falsity of the representations now complained of, entered into a contract of settlement with the defendant, and that he thereby ratified the contract of purchase and can not now repudiate the same. On the question as to whether false representations were made to plaintiff in the purchase of the stock, there was sufficient evidence to go to the jury, and defendant makes no serious

contention to the contrary.  The real question, so far as the first count of the petition is concerned, is whether defendant's affirmative defense was so conclusively established as to warrant the direction of the verdict.

The alleged false representations were in substance as follows:  (1)  That the full premium of $25, at which the stock was sold to plaintiff, was to be paid into the treasury of the company and to constitute a part of the surplus, whereas, in fact, a large part of the same was paid out in commissions to the officers.  (2)  That the directory of the company included, among others, Morgan G. Bulkeley, president Aetna Life Insurance Company, Hartford; George L. Chase, president Hartford Fire Insurance Company, Hartford, Conn.; William B. Clark, president Aetna Insurance Company, Hartford, Conn.  (3)  That the shares sold to plaintiff had an actual value of $125, whereas, in fact, they were worthless.

Of the subscription price the plaintiff paid $500 cash. Thereafter and prior to September 22, 1905, the plaintiff, being an attorney, performed legal services for the defendant and rendered a bill therefor amounting to $130, plus expenses.  Prior to September 22, 1905, he had sent his check for $750 to the defendant to pay the balance of his subscription price, but countermanded the same before it was presented.  Some correspondence was had between the parties and also a personal conference, which resulted in the following agreement, bearing date September 22, 1905:

This agreement made this 22nd day of September, in the year one thousand nine hundred and five, 'between George W. Bowen, of Carroll, Iowa, party of the first part, and the Aetna Indemnity Company, a corporation duly organized under the laws of the state of New York, party of the second part, witnesseth:

Whereas, the party of the first part has duly subscribed for ten (10) shares of capital stock of the Aetna Indemnity Company, and has' promised pay thereon and

therefor the sum of twelve hundred and fifty ($1250) dollars; and

Whereas, the said party of the first part has heretofore and prior to the date of this agreement paid into the treasury of the Aetna Indemnity Company the sum of five hundred dollars ($500.00) on account of said subscription; and

Whereas, one hundred and thirty dollars ($130.00) due the party of the first part for legal services, has been credited on account of said subscription, thereby leaving a balance due on said subscription of six hundred and twenty dollars ($620.00); and

Whereas, the party of the first part is an attorney and counselor at law engaged in the practice of his profession:

Now, therefore, in consideration of the premises and of the sum of one dollar ($1.00), lawful money of the United States, in hand duly paid by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged, it is hereby covenanted and agreed between said parties that the party of the first part shall pay the balance of his subscription to the capital stock aforesaid amounting to six hundred and twenty dollars ($620.00) as aforesaid, by rendering and performing legal services on behalf of said corporation.

And it is further covenanted and agreed that the party of the first part shall not be compelled to pay any subscription of his stock in any other manner than by the rendition of legal services.

And it is further covenanted and agreed that the party of the second part will, when practicable, employ the party of the first part as its attorney at law and representative in the prosecution and defense of such actions at law, or suits in equity as the party of the second part may from time to time have in the territory tributary to its Des Moines office in the state of Iowa, and that all just and proper fees that may become due and owing to the party of the first part, for and on account of such services to be rendered by the party of the first part at the request of the party of the second part, as its representative and attorney at law as aforesaid, shall be applied to and used in liquidation of the amount due from the said party of the first part on account of his stock subscription aforesaid until the same shall be wholly liquidated.

In pursuance of this agreement the plaintiff performed legal services for the defendant, and his compensation therefor was applied upon his subscription until the same was fully paid. It will be noted that this agreement on its face does not purport to be a settlement of any controversy. Other evidence was properly introduced, however, to show that such was its purpose. If such contract was entered into for the mutual purpose of settling the very matters now complained of, then it is a bar to the present action.

1. FALSE REPRE-
SENTATIONS:
rescission:
waiver.

We think, also, that if, when such contract was entered into, the plaintiff knew or ought to have known substantially all the material facts upon which he now bases his claim of falsity of representations, then he ratified the sale and waived his right to rescind on such ground. But the burden was upon the defendant to prove this affirmative defense. The evidence, as it is presented to us in this record, is not so conclusive as to warrant the direction of the verdict in favor of defendant. In view of a new trial, we refrain from discussing it in detail. It is sufficient to say that under the evidence the question was for the jury at this point also.

II. Many rulings of the trial court upon the introduction of evidence are complained of by appellant. The principal complaint is directed against a series of rulings upon the cross-examination of the plaintiff. The defendant had offered in evidence certain letterpress copies of letters written by the plaintiff to one Quint and others; these copies being contained in the letterpress copy book of the plaintiff himself. Upon objection of plaintiff, these copies were excluded because of insufficient foundation laid for their introduction as secondary evidence. Thereafter, in the cross-examination of the plaintiff as a witness, counsel for defendant used plaintiff's letterpress copy book for reference and exhibited certain pages thereof to the plaintiff for the

2. EVIDENCE:
examination
of witnesses:
use of letter
press copies.

purpose of refreshing his memory. To this line and method of cross-examination, plaintiff's counsel interposed many objections, all of which were overruled. The matters inquired about on cross-examination were germane to the direct examination. The letterpress copies so used in cross-examination were those which had been kept by the plaintiff himself, and were exhibited to him as an aid to his recollection. Witness was a party to the case. The copies so used were made by him and were as much his own act as were the original letters, even though they were only secondary evidence of the contents of such letters. The cross-examination was confined within proper limits of the court's discretion, and we think there was no error at this point.

Purported letterpress copies of letters written to the plaintiff by one Quint were also used to some extent in such cross-examination, over the objection of plaintiff's counsel. It appeared that a notice to produce the originals had been served upon plaintiff, and that he had produced all such originals that he could find. The attention of the plaintiff as a witness was directed to certain purported copies of letters to him as found in the letterpress copy book of Quint, and he was asked, in substance, to state whether he had received such letter or letters, and whether he had received any letter from Quint containing the statements appearing in such purported copy book. In view of the notice to produce the originals and his response thereto, we think that such examination was properly permitted. Other alleged errors as to rulings upon evidence are not such as are likely to arise upon a future trial, and we will not undertake to consider them in further detail.

**3. Same.**

III. By the second count of his petition, the plaintiff claims damages for breach of contract of employment. The contract upon which this count is based is the same contract of September 22, 1905, which we have already set

out and upon which the defendant's affirmative defense is based. The contention of the plaintiff is that the defendant did not give him all its legal business within the territory specified in the contract, and that it employed other attorneys to perform a part of such business. The theory of plaintiff is that he was entitled to exclusive employment by the defendants as attorney within the specified territory, and that the employment of other attorneys by the defendant within such territory was a breach of such contract. We do not think that the contract will bear this construction. The contract did absolve the plaintiff from paying the balance of his subscription in any other manner than by the performance of legal service. This provision was fully performed by both parties. Subject to this provision, we see nothing in the contract which would prevent its termination or abandonment at the election of either party at any time. Neither does the record disclose any basis for a measure of damage. As to this count of the petition, the verdict for the defendant was properly directed, and the order of the trial court in that respect must be affirmed. The order directing a verdict on the first count must be reversed.—*Affirmed* in part. *Reversed* in part.

4. Contracts: attorney and client: construction.